Good morning, judges. My name is Mary Lou Hilberg, and I'm here for Mr. Asberry. I would ask to reserve some time for rebuttal. I'd like to begin the argument by acknowledging that the face of habeas in the federal courts has changed drastically since I filed my reply brief. And I believe that there are primarily two cases that I need to address briefly, but they get us back to the main points of my argument. I've spent the last two weeks trying to figure out a way around Cullen v. Pinholster to demand an evidentiary hearing in this Court, and frankly, I can't. So I would say that I would, for the purposes of this argument, concede that I'm probably not entitled to an evidentiary argument, evidentiary hearing in the case. However, what Cullen v. Pinholster took away, I think Brown v. Playa supplied in this case, because – Brown v. Playa? Playa. I'm sorry. I don't know if I pronounced it any better than you did, but I just want to make sure I knew which case we were talking about. It is the case we're talking about, and specifically on page 20 of that opinion, Justice Kennedy writes, Prisoners in California with serious mental illness do not receive minimal adequate care, period. I'll stand on that. I agree. I wonder if he has a record to back him up. Excuse me, sir? I wonder if there's something in the record that backs up that statement, other than the lawsuit that went back there. In Justice Kennedy's? Yes. Justice Kennedy relied on findings of the district court, which had lengthy evidentiary hearings. Was your client in California prison or was he in jail? He was in Fresno County Jail after having been treated in CDCR for many years. That's where he received whatever mental health treatment he did receive. It appears that your client had mental health problems, and you have the record, as I understand, was before the California courts in terms of just the documents about his mental health treatments. Yes. But it seems to me your task is to hook that up to both the competence question and then through that to the Feretta waiver. I agree. I agree. I don't think it's a competency question as much as a freely and voluntarily question, and that is what I'm hanging my hat on, is that he could not freely and voluntarily waive his right to counsel under Feretta when he was in the midst of a fixed psychotic delusion that his attorney was in cahoots with prosecution. Counsel, there is evidence in the record that he suffered from some mental disabilities. The trial judge, though, had him in front of him and conducts a lengthy colloquy with him about the risks of representing himself. Now, what in the record establishes that he was in the midst of a psychotic episode? The fact that he believed his attorney actually had collaborated with the prosecutor and would not be convinced otherwise, even though both the prosecutor and the defense attorney said, this simply isn't true, would you believe. It's not true that he was in the midst of a psychotic episode. But that is your best evidence of a psychotic episode. You don't have any medical records that would show that he was in the middle of a psychotic episode. Absolutely not, because Fresno County Jail denied him treatment. How could I have medical records showing that he was in the midst of a psychotic episode when he asked for treatment and Fresno County Jail said no? He's indigent. I would love Mr. Asbury to have been able to independently bring in the best medical experts to assist him. Lord knows he needs them. But he asked for treatment nine times on the record. Nine times he asked for record, for treatment. And they say no, because he has not been compliant previously with his treatment, which is absolutely true. But it's also a symptom of his disease. And he cannot be punished under the Eighth Amendment for being ill. And that's what he is. He's very, very, very ill. He's one of the sickest clients I've ever had, and believe me, I've had some doozies. He was punished because Lord knows he is a royal pain in the you-know-what. There's no question about it. He's obnoxious, he's difficult, he's stubborn, and he's very, very, very sick. He did appear to the trial court here to be coherent, though, and to be competent to both stand trial and the district court, the trial court implicitly finds that he's competent to represent himself here. I'm not arguing competency. I just need to make that really clear. This is not a 1368. So what are you arguing? I'm arguing this is not a free and voluntary waiver. Is that what competency is? I believe it's a higher standard. There's a presumption against waiver. There's clear and clear Federal law says there's a presumption against waiver. So your contention is it's possible to be competent to represent yourself, but not to have voluntarily waived your right? Yes, because in this particular point, the focus of his delusion centered around counsel. Just because you're paranoid doesn't mean that you are totally psychotic in every single aspect. You can have a paranoid ideolation fixed on one particular area, and in this he was fixed with his paranoid belief that counsel was to be fixed. Do you have any example from any case, I'll take a state case, do you have any example in which a court has found somebody competent to represent themselves, but not in a position to voluntarily waive the right? This might be the first such case. Okay. So you don't have any other example where you've ever seen a court who's made that determination? No. And I admit that it's splitting hairs, but this is a really unique case. Because of the record, which is uncontroverted, that he was delusional on this one particular case. I didn't say that he was delusional. I mean, he may have drawn the wrong consequences, but he claims that he knew that one of his witnesses was contacted by the D.A. Prosecution. Prosecution. Well, I guess maybe he was delusional. The prosecution said not only didn't the D.A. defense tell us anything, but we haven't contacted any witnesses, is that what he said? And the defense counsel said, I haven't given anything to anybody. And the prosecutor said, no, he hasn't given me anything. I haven't contacted any witnesses. But Mr. Asbury was absolutely, unconditionally, irrevocably firm in his belief that this was a conspiracy between defense counsel and the prosecutor against him. Let me ask one more question, and you should reserve your time. To go back to the Penn-Holster problem, if the basic question under Penn-Holster was the State record sufficient to do what? Sufficient that there should have been an evidentiary hearing in the State, or sufficient on its face to demonstrate that the State was unreasonable in not granting relief or not going forward, or exactly what? In other words, it seems to me that your record isn't sufficient to prove that he isn't competent, but it might be sufficient to trigger an evidentiary hearing as to whether he was competent. Well, the court in Penn-Holster said, we hold that review is limited to the record as it was before the State court. And then they talk about, later in the case, they talk about under California law, the California Supreme Court's summary denial of a habeas petition on the merits, which is what we have here, reflects the Court's determination that the claims made in the petition do not state a prima facie case entitling the Petitioner to review, to relief. So what I'm saying is that in this case, the State court made two fundamental errors. First, they did not accept that the care that Mr. Asbury had been given was a violation of the Eighth Amendment. And I think that question has been answered. Second, I think they never quite got beyond that to the next issue as to the nexus between the psychosis that I'm alleging that he was in and the waiver of counsel. So I don't know that Penn-Holster answers this question exactly when you have a State court judgment that has been overruled by subsequent Federal law, such as Brown v. Lowe. Kagan. Well, that seems like an exaggeration, because nobody was looking at the record in this case. Okay. I would say that Penn-Holster doesn't apply because the reasonable assumption is that the Court stopped at the Eighth Amendment. Well, your client was alleging at this moment, during this week, is that right, that he was having voices and hallucinations and so on? Yes. So there was a record. It wasn't a medical record, but he – but it was him. There is a documented record that he was going and repeatedly telling people this during the same week that this hearing was? It was building up, but it was over a period of time while he was in Fresno County Jail that – and there aren't great records, I'm going to admit that, but what there is is only from the jail staff, and they recorded his requests. And how close in time to the hearing was it? If you give me a chance on re-title, I have it with me. Fine. Thank you, and we'll give you a minute and a half for rebuttal. Thank you. Good morning, Your Honor. It's David Andrelridge, Deputy Attorney General, for Respondent. As to the claim that he was deluded, and that's why he was insisting that his attorney had done something, he said on the record, I've got a letter from a witness saying different, I've got the letter right here. I don't know what that letter says, and the petitioner has never shown it, so the idea that somehow he just has it written – Nobody ever asked to see it, either. Sorry? Nobody ever asked to see it. Well, but the fact is he had it, and if – and they haven't submitted it, and so saying that he has no basis, when in fact he demonstrated what his basis was, we just don't know what it is, is contrary to the record. Well, do you know the answer to the question I just asked? How close in time to the hearing in which he waived his right to counsel was the set of jail documents in which he's saying that he was hearing voices? I know the hearing was on August 16, 1999. The – as for when he – Well, here's September 1999 – September 9, 1999. There are – That's the one I see, and then there's – that's the only one I see, September 9, 1999, for the jail. There are a series of requests – For 21st, 1999. From second volume ER 13, and then it goes on from there. Looks like there are requests from September of 98, and then they go on – But those aren't when he was in jail, are they? Well, your opponent will let us know in a minute, but if he – in terms of – if the record shows that – let's hypothesize, it may not be so – that the record shows that the week of the hearing he was reporting to the jail that he was hearing voices and was paranoid, but they didn't give him treatment. The not giving treatment isn't exactly the point. The question is whether his – the report of his report of his mental state in the absence of treatment is – should have been sufficient on the record for California as a prima practice. And I'm not talking about necessarily at the time, because that's between him and his attorney, whether or not counsel should have done something at that time, but years   ago, when he submitted his claim on habeas, he can't just say I made a claim back then. He has to show – So you're saying he should have, when he submitted the habeas petition in California, have included a medical documentation saying that given this record, he wasn't competent at the time. Yes. And I'm – frankly, I'm not sure that would suffice, but at a minimum, that would be required. He has to prove his case on habeas. He can't just say way back when I didn't get a hearing, and you know I could have been. Saying that he – I just don't have the evidence, how can you expect me to have the evidence? It's your burden to prove it on habeas. If you don't have the evidence, you have no basis for claiming that you were actually incompetent. Because if he doesn't have the evidence, all he has is his own belief he was incompetent. Counsel, would you address the question as to whether one can be – can be competent to represent oneself, but not be in a position to waive the – your FORETA rights voluntarily? I believe – if I understand what counsel was saying, and I tried to address it in the brief, there is a separate question of competence versus voluntary and intelligence. He has to be competent to waive counsel, i.e., have the actual capacity, but also his waiver has to be voluntary and intelligent. We discussed that in the brief, and the argument that was made was that it can't be voluntary if it's in fact compelled by delusions. But – and as we pointed out, Colorado commonly, the Supreme Court already has disposed of that claim, that it involuntarily means it was induced by the prosecution or coercion from the police. It cannot be you simply have some internal demons. What should the trial court have done on the State's side when they're faced with a record like this where there is some indication that he may have a psychosis, but there's other similar competent medical professionals that claim he's just angling to get social security benefits? There seems to be a different point of view in the record based upon the medical evidence. What – the State court judge, when confronted with a situation like that, what's his responsibility – his or her responsibility? Well, the question whether an evidence you're hearing is required isn't one of fact at all. It's a question of law. It's like summary judgment. Can you judge it on the pleadings or not? And there is – and once it's clear that it's a question of law, then it becomes a question of has the Supreme Court ever said anything to the effect that a State court has a legal duty to hold an evidence you're hearing on such a showing? Yes, that's the point. And there is no Supreme Court case to that effect. So California may or may not – But that – So what you're saying is, if I understand it, that this isn't in opposition to or an improper use of any of the Supreme Court cases. Is that your position? Deciding this case without a hearing was not a violation of the Supreme Court precedent, yes. Okay. I thought that the question is whether there – the record before the State court made that a prima facie case. And if it did, then why doesn't that necessarily mean that deciding it without a hearing? It doesn't seem like the hearing is a separate question as to which you need a separate Supreme Court case. The Supreme – well, when you are saying the California court was required to do a thing, the only way you can say that is if the Supreme Court required the State court to do a particular thing. And the Supreme Court has not laid down habeas rules for States. I believe that's one of the things they went into in Pennsylvania v. Finley when they were talking about you don't have a right to counsel on State habeas. It may be nice for a State court to do that. And California may or may not in its discretion. But if they're saying California law required him to have a hearing, then he's now trying to claim a violation of State law, which he simply can't do. So here his requirement was to show the United States Supreme Court president compelled the State court to have a hearing before disposing of this claim. There is no such case. This is an issue of procedural law. And when you try to get relief under AEDPA, it means there has to be a question of Federal constitutional procedural law governing State habeas. Well, he doesn't have any such case. There is – well, you know, the Supreme Court has obviously said there are certain procedural requirements. Hearing evidence, for example, criminal prosecutions, they haven't said so on the area of habeas. They have outlined a few things on habeas that are procedural requirements. For example, you're entitled to a transcript if there is an evidentiary hearing. But you are not – they have not expanded that to include when you actually get an evidentiary hearing in State court. And that's really the grabment of the claim here. Because you certainly can't say that this evidence compelled the showing that he was incompetent. In fact, I can easily see a State court saying that, at a minimum, more likely than not from this evidence, if this, for example, is all we'd hear in a hearing, then it's not going to persuade. The problem, of course, is that where this all is going to wash out, if this is all right, is that nobody is ever going to get a habeas because of any kind. Because a – ordinarily, people are operating pro se. They do not have lawyers. They put in what they've got. And then if they show something that seems to have something coherent going for it, a lawyer may be appointed. And then they may be able to – to actually gather some information. But they're sitting there in prison. How was he sitting there in prison, for example, supposed to come up with a doctor to produce this information? Well, Your Honor, if, in fact, he has no evidence, why is he making the claim? All he has is his speculation. No doctor has ever been able to attribute that. Just because he's – Well, he doesn't – he, in fact, has a long record of serious mental health problems both before and after this trial. Actually, he has a long record of treatment, at a minimum. But that goes to what even is required to get treatment. It may not be that you have to show illness in order to get treatment. Rather, if you've got a busy prison doctor staff, it may be that there's no – there's a harm if, in fact, you are ill and we don't give you treatment. So it may be the easiest thing, seeing you 10 minutes, you know, every two weeks. You say you've got symptoms? Okay. We can't bother verifying them. All we can do is just treat you as though you do. So the mere fact he got treatment doesn't mean he actually had illness. But even assuming that he had some mental issues which did make treatment proper, either that record of illness, in fact, does show he needs future treatment or it doesn't. If it doesn't, then he has no basis filing a habeas petition merely because of that record. If he doesn't have the evidence that should cause someone to act, he shouldn't file a petition. Because the mere fact that he thinks there should have been action doesn't justify him coming to court and demanding that there should be. So if he doesn't have the evidence to prove his case, he doesn't have a case. But in this instance, the issue isn't whether he should get treatment. The issue is or should have gotten treatment. The issue is how that impacted, if at all, on his Pareto waiver. And to go back to that for a minute, just conceptually isn't it and whether one calls it voluntariness or competence doesn't seem to matter that much. Isn't it possible for someone to have a mental illness as to which the decision whether to waive counsel is going to be influenced by delusions or something? But there is nothing wrong with him in terms of his cognitive ability to carry out a trial once they have one. I think I agree, and that was addressed at page 20, footnote 9 of the opening of the answering brief. That's Colorado v. Connolly, where someone had, when they were claiming in the context of the Fifth Amendment, because I was deluded, I couldn't waive my right to counsel during questioning. And they said, no, no, that's not what we're talking about when we're talking about voluntariness. There is no wrong. Kagan. So you're not talking about voluntariness, you're talking about competence, but the person still can't do the waiver. And it's still possible that there could be a division in competence between the competence with regard to the decision to waive and the competence with regard to carrying out the trial. Well, Indiana v. Edwards said there can be a difference between the waiver of your ability to stand trial and your ability to represent yourself, but it doesn't say that a State court must find that. So if you – the question is, must a State court find a distinction between the two? The answer is no, because all they said in Indiana v. Edwards was may. You know, the State court in Indiana v. Edwards denied a Feretta motion because he wasn't confident to represent himself in that State court's judgment. But competence actually has to go with capacity, Your Honor. And so whether he could understand the benefits of counsel and the consequences of waiving it, which, by the way, he did. There's no question he did understand. He said so in the other people, you know, people we advertised. So your position is that if somebody has a paranoid delusion such that he believes that his lawyer is stabbing him every night and invading his room or something really extreme, and he cannot have this lawyer anymore, and therefore he has to represent himself. But otherwise, in terms of his ability to actually carry out the trial, he doesn't have any delusions. Therefore, that's just fine. Well, the definition of competence to stand trial includes an ability to be assisted by your attorney. And what you're describing likely would cause a problem with his ability to be assisted by his attorney at all. So that, I think, you have a situation. But he doesn't. He's saying I can do it without a lawyer. And, in fact, he can do it without a lawyer. But the problem is that his decision to do it without a lawyer is what's being impeded by his delusions. But the very scenario you just articulated factually would have led to an incompetence to stand trial because that standard includes the ability to enjoy the assistance of counsel. I'm not understanding what you're saying. But, okay, your time is up. Thank you, Your Honor. Thank you. And thank you for a helpful argument. I'll be brief. I apologize to the Court that I don't have the correct citation to the excerpts of record, but I can tell you exactly where to look for the information. All right. What I see is on the page after Exhibit B to the State Petition. And it's inmate grievance form dated September 9th, 1999. That's the one I've got. And that's September 9th, which is about a month after or three or four months. Right. But he gives the dates that he's filed the requests to see the psychiatrist. And the dates he filed the request to see the psychiatrist were July 15th of 1999, August 4th of 1999, August 14th, two days before the hearing, August 20th, four days after the hearing, and then four other dates between May and July of the same year, and then one other time right after the hearing. So can you explain briefly how the failure to treat is hooked up to your theory about the impact on his waiver of hereditary rights? It seems to me you have two separate things going on. I would argue that the burden has got to be on the State to show that the waiver was not a product of the fixed delusion, because otherwise the State is benefiting from their own Eighth Amendment violation. That's really what the Attorney General is arguing. What case do you rely on for that shift of the burden of proof? That doesn't seem to be what the Supreme Court talks about, the responsibility is. Well, I think when you look at — there isn't a case yet, Justices. I'm asking that this be the first. But when you look at Brown v. Playa, which is the first case that I know of, that flat out says that California inmates have not received adequate mental health care, period. But isn't that about California prisons and this isn't a California prison? No, but I would submit that, given this record, that the Court can take judicial notice that it's likely to be worse in Fresno County Jail and that Mr. Asbury actually had years-long worth of treatment at the hands of CDCDR, which did nothing good for him, that here you have a situation where the State creates the vacuum. They create the vacuum of treatment. They create the vacuum of records. They should not be allowed to benefit from it saying, oh, there's no evidence. And the case upon which you're going to rely from the Supreme Court is what? If you — I don't know that I actually have one that says exactly that on all fours. So isn't the burden of the petitioner here to show that it was — that the State court or the State situation was acting inconsistent with the law of the United States, meaning the Supreme Court? And if there is no law, then habeas is not the tool that you — State habeas is not the tool you can use. But there is law that says that when you are a prisoner, that you have an Eighth Amendment right to treatment. There's case law, there's old case law that I cited in my brief that says that. Okay. Thank you very much. Thank you both for your arguments. The case of Asbury v. Griffin.
judges: Wallace, Berzon, Bybee